# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| FRANKIE RICHARDSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00147-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frankie Richardson brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).

Upon consideration of the parties' briefs (Docs. 15, 16, 17), those portions of the administrative record (Doc. 14) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and the oral argument of the parties made May 25, 2016, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I.    Background

On September 22, 2011, Richardson filed an application for SSI with the

Social Security Administration ("SSA"),[1] alleging disability beginning August 25,

2011.[2]  After her application was initially denied, Richardson requested a hearing

before an Administrative Law Judge ("ALJ") for the SSA, which was held on April

11, 2013.  On June 15, 2013, the ALJ issued an unfavorable decision on

Richardson's application, finding her "not disabled" under the Social Security Act

and thus not entitled to benefits.  (*See* R. 172 – 187).

Richardson requested review of the ALJ's decision by the SSA's Appeals

Council.  The Commissioner's decision on Richardson's application became final

when the Appeals Council denied the request for review on January 22, 2015.  (R. 1

– 6).  On March 20, 2015, Richardson filed this action under § 1383(c)(3) for judicial

review of the Commissioner's final decision.  (Doc. 1).  *See* 42 U.S.C. § 1383(c)(3)

("The final determination of the Commissioner of Social Security after a hearing [for

SSI benefits] shall be subject to judicial review as provided in section 405(g) of this

title to the same extent as the Commissioner's final determinations under section

405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the

Commissioner of Social Security made after a hearing to which he was a party,

irrespective of the amount in controversy, may obtain a review of such decision by a

---

[1] SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.      Standards of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as

automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of

the proper standards to be applied in reviewing claims." (footnote and some citations and quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for … SSI requires that the claimant be disabled. 42 U.S.C. § … 1382(a)(1)-(2). … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § … 1382c(a)(3)(A) …

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied

review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III.   <u>Analysis</u>

At Step One, the ALJ determined that Richardson had "not engaged in substantial gainful activity since September 22, 2011, the application date …" (R. 177). At Step Two, the ALJ determined that Richardson had the following severe combination of impairments: coronary artery disease; coronary atherosclerosis; hypertension; lengthy history of tobacco abuse; and depression due to medical condition. (R. 177). At Step Three, the ALJ found that Richardson did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 178).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under

the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Richardson had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a)[,]" with the following limitations:

The claimant is able to lift/carry and push/pull 10 pounds occasionally, less than 10 pounds frequently; stand/walk for a total of 2 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. However, she must avoid: climbing of ladders, scaffolds, ramps, or stairs; kneeling or crawling; exposure to unprotected heights and moving mechanical parts; exposure to extreme cold and extreme heat; and is limited to simple tasks; limited to routine and repetitive tasks; and limited to simple work-related decisions.

(R. 179).

Based on this RFC, the ALJ determined that Richardson was unable to perform any past relevant work. (R. 185). At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Richardson can perform given her RFC, age, education, and work experience. (R. 185). Thus, the ALJ found that Richardson was not disabled under the Social Security Act. (R. 186 – 187).

Richardson raises three claims of error in her brief. The Court will address each in turn.[5]

## A.     Claim 1 (Anxiety)

Richardson first complains that the "ALJ's decision is silent regarding her consideration of anxiety as an impairment, severe or non-severe[,]" despite her subjective testimony and record medical evidence indicating the presence of such an impairment. (Doc. 16 at 4). With regard to the ALJ's failure to mention anxiety at Step Two, the Court agrees with the Commissioner that this is, at most, harmless error. "At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). *See also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps. *See Jamison,* 814 F.2d at 588. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or

---

[5] Generally, claims of error not raised in the district court are deemed waived. *Cf. Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court."); *Hunter v. Comm'r of Soc. Sec.*, No. 15-11567, 2016 WL 3159217, at *4 (11th Cir. June 7, 2016) (per curiam) (unpublished) (applying *Stewart* holding in Social Security appeal).

impairments, he should reach a conclusion of no disability. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.")

Moreover, the ALJ's decision adequately demonstrates that she considered anxiety at both Step Three (*see* R. 178 (stating that the ALJ considered Richardson's "impairments individually and in combination" and noting that Richardson reported she "did not handle stress or changes in routine well")) and Step Four (*see* R. 180 (noting that Richardson had listed "anxiety/depression" as a condition that limited her ability to work), 182 (discussing the medical evidence of anxiety)).[6] *See Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914–15 (11th Cir. 2014) (per curiam) (unpublished) ("Although the ALJ found that Mr. Freeman's back pain was not a severe impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis. Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered

---

[6] Though Richardson conclusorily styles Claim 1 as challenging whether substantial evidence supports the ALJ's mental RFC determination at Step Four, her substantive argument exclusively focuses on the ALJ's purported failure to discuss Richardson's anxiety, and particularly her failure to classify it as a severe or non-severe impairment at Step Two.

in the subsequent steps of the ALJ's analysis."); *Tuggerson-Brown*, 572 F. App'x at 951-52 ("While the ALJ did not need to determine whether every alleged impairment was "severe," he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. Despite Tuggerson–Brown's arguments to the contrary, it is apparent from the face of the ALJ's decision and the RFC report relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in combination in concluding that Tuggerson–Brown was not disabled. In performing his analysis, the ALJ stated that he evaluated whether Tuggerson–Brown had an "impairment or combination of impairments" that met a listing and that he considered "all symptoms" in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence. *See Wilson*[ *v. Barnhart*], 284 F.3d [1219,] 1224–25[ (11th Cir. 2002) (per curiam)]. The ALJ went beyond those statements in his analysis, specifically discussing evidence of Tuggerson–Brown's depression, diabetes, leg, neck, and back pain, and mild degenerative disc disease. The RFC report likewise addressed many of the same symptoms. Accordingly, the record sufficiently demonstrates that the ALJ properly considered all of Tuggerson–Brown's impairments, even those not specifically found to be severe, in reaching a conclusion that she was not disabled. Tuggerson–Brown does not specifically challenge or assert that the ALJ's ultimate conclusion was not based on substantial evidence in some other regard, and therefore we affirm the denial of disability benefits."). At oral argument, Richardson made much of the fact

that, immediately preceding her mental RFC, the ALJ stated that the limitations were "[d]ue to impairment caused by depression" only (R. 183); however, the ALJ's failure to specifically cite to anxiety as well immediately prior to the mental RFC determination is, at most, harmless, as the ALJ's opinion otherwise adequately indicates that she considered anxiety at Step Four. Certainly, Richardson has not attempted to show how the mental RFC is inconsistent with the record evidence of her anxiety.

Accordingly, the Court **OVERRULES** Richardson's assertions of reversible error in Claim 1.

## B.  Claim 2 (VE Hypothetical)

Richardson next complains that the ALJ's hypothetical questions to the vocational expert (VE) at Step Five failed to account for her physical impairments of anemia and enlarged uterine fibroid.[7] " 'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which

---

[7]    Though Richardson conclusorily styles Claim 2 as challenging whether substantial evidence supports the ALJ's physical RFC determination at Step Four, her substantive argument exclusively focuses on the ALJ's purported failure to include these impairments in her VE hypotheticals at Step Five. For her part, in her brief the Commissioner does not appear to have picked up on the Step Five argument, instead asserting, much like she did for Claim 1, that "[b]ecause the ALJ considered Plaintiff's physical symptoms and her alleged limitations at subsequent steps of the decision, any failure to explicitly list certain impairments at step two was harmless error." (Doc. 17 at 5 – 6).

In arguing Claim 2, Richardson purports to quote *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (per curiam), for the proposition that an " 'ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion with articulating specific, well supported reasons for crediting some evidence while discrediting other evidence.' " (Doc. 16 at 6). As was recently pointed out to Richardson's counsel in another Social Security case, *Brownlow v. Colvin*, Civil Action No. 15-00392-N, 2016 WL 814953, at *6 n.8 (S.D. Ala. Feb. 29, 2016), no such quote appears in *Marbury*.

The Court agrees with the Commissioner that Richardson's mention of "mental retardation" in one sentence of Richard's Claim 2 argument appears to be an editing error.

comprises all of the claimant's impairments.' " *Winschel*, 631 F.3d at 1180 (quoting *Wilson*, 284 F.3d at 1227). *See also Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("In this case, we cannot assume that the vocational expert would have answered in a similar manner had the ALJ instructed him to consider all of the appellant's severe impairments. Thus, we must conclude that the Secretary failed to meet its burden of showing that the appellant could perform other gainful employment in the economy. We hold that the Secretary's decision was not supported by substantial evidence."). "However, questions that 'implicitly account[ ] for the claimant's limitations' are sufficient to meet this requirement[,]" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (per curiam) (quoting *Winschel*, 631 F.3d at 1180–81), and an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

Claiming that she "provided objective medical evidence" of anemia, Richardson cites (1) several notations in medical records indicating that she takes iron supplements; (2) a discharge summary for an almost-two-week hospital stay in August 2011 after being admitted with chest pain and shortness of breath, where it was noted, *inter alia*, that she was "profoundly iron deficient," was given iron transfusions during her stay, and would "continue oral iron supplementation" on discharge (R. 455 – 456); and (3) stray comments in her subjective testimony that she has to stop after 5 or 10 minutes of activity because she "get[s] tired" (R. 231 –

232) and can't go out alone "because of unblance [sic]" / "imbalance" (R. 316, 327).[8]

Richardson, however, has pointed to no record evidence actually diagnosing anemia. Even the cited discharge summary did not include anemia among the nine "discharge diagnoses" it did list. (R. 456). To the extent Richardson is asking the Court to infer a diagnosis of anemia from this evidence, the Court declines.[9]

The ALJ acknowledged at Step Four that an abdominal ultrasound performed during a September 2011 hospital visit revealed an "enlarged uterine fibroid" (R. 180 (citing Exhibit 3F, pages 9-10 [R. 436 – 437])). While it is true, as Richardson cites, that her uterine fibroid mass was described as causing her abdomen to appear "about the same size as 7 month pregnancy" (R. 445), she has pointed to no record evidence indicating that the mass impaired her abilities,[10] and the ALJ found that, "despite her impairments," Richardson's "admitted activities of

_____

[8] Though Richardson claims otherwise (*see* Doc. 16 at 5), none of the record testimony she has cited reports "dizziness."

[9] At oral argument, Richardson attempted to shift the focus of this claim, asserting only that the ALJ's decision generally failed to account for evidence of "fatigue." (R. 423). However, the ALJ noted that Richardson denied "shortness of breath" "as of November 2011," and that "she experienced symptomatic improvement (with less chest pain and shortness of breath) following her heart surgery in 2011…" (R. 180). Moreover, as the Commissioner correctly notes in her brief (Doc. 17 at 5), numerous medical records list fatigue as "not present" (R. 414, 418), or stated that Richardson denied "shortness of breath" (R. 548, 565, 569) or otherwise had "no complaints" of fatigue (R. 613 – 614, 621 – 622). For those visits in which fatigue was noted, Richardson was diagnosed with transient illnesses: bronchiolitis and influenza (R. 423 – 425); and gastroenteritis and fever (R. 617 – 618).

[10] Richardson asserts that this visit was the result of her fibroid mass "caus[ing] her to have vomiting and pain in her lower back, pain severe enough to force her to go to the emergency room." (Doc. 16 at 5 (citing R. 431)). While the treatment notes from this single emergency room visit do contain some discussion of her fibroid mass, they do not state that it was the cause of her symptoms. Rather, Richardson reported that the pain and vomiting "started suddenly after eating a hamburger," and "food poisoning" was ultimately diagnosed. (R. 437).

daily living," which included "taking care of her autistic young adult son" and a "regular exercise program includ[ing] walking 2-3 times weekly," were "substantially more consistent with an individual able to sustain competitive work activity." (R. 180, 184). The ALJ also found that the "objective medical evidence of record … is consistent with an ability to perform sustained sedentary work, subject to the limitations specified in the" RFC, noting that, "since October 2011, [Richardson ] has not been hospitalized for extended treatment; has been evaluated and conservatively treated in the emergency room a few times for relatively non-urgent complaints; and had infrequently presented for outpatient evaluation and treatment." (R. 184). Finally, the ALJ found Richardson's statements concerning the intensity, persistence and limiting effects of her symptoms to be "not totally credible to the extent they are inconsistent with" the ALJ's RFC determination. (R. 184). Richardson does not challenge these determinations, which implicitly indicate that the ALJ did not consider her fibroid mass to have a substantial limiting effect on Richardson's ability to work.

Richardson has pointed to no record evidence of an anemia diagnosis, nor has she cited evidence contradicting the ALJ's implicit finding that her enlarged fibroid did not significantly impair her ability to work beyond the limitations in the ALJ's RFC, which were included in the ALJ's hypothetical to the VE at Step Five  As such, she has not shown that the ALJ was required to explicitly account for either condition in her hypotheticals. Accordingly, the Court **OVERRULES** Richardson's assertions of reversible error in Claim 2.

## C.      Claim 3 (Medication Side Effects)

Finally, Richardson asserts that the ALJ erred in not finding her disabled due to frequent urination caused by Richardson's diuretic medications.  At her hearing before the ALJ, Richardson testified that one of the side effects of her medications was "frequent urination" and that she "use[s] the bathroom all the time…"  (R. 228).  Also at the hearing, Richardson's representative "asked the vocational expert whether any jobs would be available for a hypothetical individual who needed to take breaks every 15 minutes, or for an individual who required frequent restroom breaks due to the side effects (urinary frequency) of prescribed medication," with the VE responding that "there would be no jobs available for such an individual."  (R. 186).

The ALJ noted Richardson's testimony regarding her frequent urination but determined that the "overall record otherwise indicates that actual side effects of the claimant's prescribed medications would not interfere with her ability to perform work activities in any significant manner."  (R. 184).  In particular, the ALJ noted "the claimant's disability status reports show that she had experienced no side effects from 9 of 11 prescribed medications," with a March 2012 report stating only "that her blood pressure medication caused dizziness and that she had experienced drowsiness after taking Lortab.  (R. 183 (citing Exhibit 9E [R. 339 – 344])).   The ALJ found Richardson's statements concerning the intensity, persistence and limiting effects of her symptoms to be "<u>not</u> totally credible" (R. 184); as for the hypotheticals presented to the VE by Richardson's representative, the

ALJ found them "not supported by the evidence of record in this case." (R. 186).

Richardson cites no record evidence corroborating her testimony of frequent urination, much less any that indicates it would prevent her from working. As the Commissioner's brief correctly points out (Doc. 17 at 6), not only did Richardson consistently fail to self-report side effects of frequent urination in her disability reports to the SSA, she also regularly failed to report this side effect her physicians. (*See* R. 362 [no "problems urinating" or other GI/GU issues noted] 414, 418, 548 ["When questioned about medication side effects, patient notes none."], 569 [same as previous], 565 ["When questioned about medication side effects, patient notes none. Tolerating chlorthalidone."], 608 ["GENITOURINARY: No complaints"], 614 [same as previous], 622 [same as previous], 629 [no "problems urinating" or other GI/GU issues noted]). The Eleventh Circuit has consistently held that an ALJ may discredit a claimant's alleged symptoms from medication side effects where the claimant has failed to report those side effects to her physicians and where the physicians have not otherwise expressed concern over those side effects. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) ("Ms. Swindle also argues that the many medications she is taking have severe side effects that the ALJ failed to take into consideration. However, the ALJ noted that Ms. Swindle did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her. The ALJ's determination that side effects from medication did not present a significant

problem is therefore supported by substantial evidence."); *Gantea v. Comm'r of Soc. Sec.*, 380 F. App'x 950, 951 (11th Cir. 2010) (per curiam) (unpublished) ("The administrative law judge was entitled to discredit Gantea's complaints because neither of the physicians who prescribed Gantea's medications stated that side effects limited Gantea's ability to work. *See Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990); 20 C.F.R. § 404.1529(c)(4) (evaluating symptoms based on 'any inconsistencies in the evidence and the extent to which there are any conflicts between [the] statements [of the claimant] and the rest of the evidence')."); *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 238 (11th Cir. 2011) (per curiam) (unpublished) ("The ALJ concluded that Mr. Colon's subjective complaints were 'not fully credible.' Substantial evidence supports the ALJ's decision to discredit Mr. Colon's complaints as they related to medication side effects: none of Mr. Colon's doctors reported any side effects from his medications, and he did not complain to them of any side effects. *See Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir.1990) (where represented claimant did not complain about medication side effects, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns about side effects from her doctors, substantial evidence supported the determination that the effects did not present a significant problem)."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (per curiam) (unpublished) ("[A] claimant's failure to report side effects to his physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with

the record." (citing *Swindle*, 914 F.2d at 226)).[11]  Thus, the ALJ's determination that

the "overall record … indicates that actual side effects of the claimant's prescribed

medications would not interfere with her ability to perform work activities in any

significant manner" is supported by substantial evidence with regard to

Richardson's subjective complaints of frequent urination.  Accordingly, the Court

**OVERRULES** Richardson's assertions of reversible error in Claim 3.  There being

no other claims of error asserted, the Court finds that the Commissioner's final

decision denying Richardson benefits is due to be **AFFIRMED**.

## IV.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the

Commissioner's January 22, 2015 final decision denying Richardson's application

---

[11]     Richardson relies primarily on *Barefoot v. Colvin*, No. 1:13-CV-841-CSC, 2015 WL
106383 (M.D. Ala. Jan. 7, 2015), in arguing Claim 3.  In *Barefoot*, "[t]he Commissioner
argue[d] that the record undermine[d] Barefoot's credibility[ because, during the relevant
period, the medical record demonstrates that Barefoot did not frequently seek treatment for
the side effects of her medication." *Id.* at *10.   The Commissioner based this argument on
notations in the record from both treating physicians and the claimant that the claimant
was doing "fine," "well," etc. *See id.* at *10 – 11.  The district court rejected that argument.
While noting, consistent with *Swindle*, that "[i]n the typical disability case, a person's
failure to seek treatment or complain of a symptom of a condition is a legitimate basis for
the Commissioner to discount that person's credibility[,]" the court nevertheless held "that
approach is not appropriate in this particular case. Just as a person who has lost their sight
would not complain about being blind every time that person visited her doctor, it is not
rational to expect Barefoot to constantly complain about known, ever present side effects of
a medicine which she must take to preserve her life." *Id.* at *11.
        *Barefoot* is distinguishable from the facts of this case.  Richardson did not simply fail
to "constantly complain" to her doctors about her frequent urination; rather, she
consistently failed to mention it to her doctors and the SSA when specifically asked about
any medication side effects.  Richardson argues that she should not have been expected to
report this side effect because it would be implied from the diuretic nature of her
medication. Regardless, Richardson "bears the burden of proving that [s]he is disabled, and,
consequently, [s]he is responsible for producing evidence in support of h[er] claim." *Ellison
v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). Richardson testified only
that she "uses the bathroom all the time" due to her medications, and she has identified no
record evidence that supports the determination that this side effect was disabling in
nature.

for SSI benefits is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 22nd day of August 2016.

_/s/Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**